IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| LAURI A. JOHNSON, | ) | CASE NO.1:20-CV-00156-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | United States District Judge |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | CARMEN E. HENDERSON |
| SECURITY, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Lauri A. Johnson ("Johnson" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Plaintiff's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On June 10, 2012, Claimant filed an application for DIB and SSI, alleging a disability onset date of April 13, 2009 and claiming she was disabled following an incident at work. The instant appeal involves a period of disability from April 13, 2009 through January 31, 2013. The procedural history of the matter is lengthy due to multiple remands and was summarized by the ALJ as follows:

A decision has previously been issued on September 6, 2012 (Ex. 9A).  An appeal was denied by the appeals court in January 2014 (Ex. 8A).  A federal court stated in March 2015 that good reasons must be given for the weight to Dr. Butt (Ex. 7A).  In August 2015, the appeals court found the claimant was disabled starting February 1, 2013 (Ex. 6A).

A decision was previously issued on May 23, 2017, in this matter. The claimant asked the Appeals Council to review the decision.  On the January 31, 2017, affirmation and order, the Appeals Council directed the Administrative Law Judge to Offer another opportunity for a hearing (Ex. 10A/2).  However, the Administrative Law Judge issued a decision without offering the claimant another opportunity for a hearing. Therefore, [the Appeals Council determined that] the administrative record [was] incomplete.

In its remand order, the Appeals Council directed me to give further consideration to the  claimant's maximum residual capacity during the claimant period at issue (April 13, 2009 through  January 31, 2013) and provide rationale with specific references to evidence of record in support of  assessed limitations (Social Security Ruling 96-8p) (Ex. 16A). In  so doing, evaluate the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence (Id.).

The claimant is alleging disability from April 13, 2009 to January 31, 2013, and this decision will consider that time period only.

(ECF No. 10 at 749).[1]

On August 3, 2018, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No. 10 at 810-843).  On October 25, 2018, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 10 at 746-777).  The ALJ's decision became final on November 26, 2019, when the Appeals Council declined further review.  (ECF No. 10 at 735).  On January 23, 2020, Claimant filed her Complaint to challenge

---

[1] The Court has not gone into significant factual detail outlining the administrative proceedings because those aspects are not at issue in this appeal.

the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case.

(ECF Nos.14, 16, and 18). Johnson asserts the following assignments of error:

1) Whether the administrative law judge failed to provide good reasons for the weight she gave to the opinion of Dr. Ahn where her analysis erroneously referred to Dr. Ahn as a non-examining State agency consultant, and the administrative law judge failed to apply the treating physician rule or the factors described in the regulations?

2) Whether the administrative law judge erred in her evaluation of State agency psychologist opinion where she gave the opinion partial weight but gave no indication she recognized that Dr. Tishler limited Ms. Johnson to one- or two-step instructions?

(ECF No. 14 at 1).

## III. Background

Johnson seeks DIB and SSI related to both physical and mental impairments. Her alleged onset date coincides with an injury she experienced at work. The ALJ found that although Claimant could perform the lifting requirements of light work, she could only walk/stand for two hours in an eight-hour workday. (ECF No. 10 at 755). Consistent with a functional capacity limiting her to sedentary exertion, a vocational expert identified only sedentary positions that Claimant could perform. (ECF No. 10 at 767, 835). Claimant does not challenge the physical aspects of the residual functional capacity in this appeal. (ECF No. 14 at 5).

Johnson also claims, however, that her physical impairments affected her mental health. The ALJ's findings/analysis related to her mental health impairments are at issue here.

### A. Relevant Medical Evidence

As Claimant's medical treatment is not at issue, the court includes the following medical background taken from Claimant's brief:[2]

_____

[2] The Court provides this background information as a summary of Claimant's mental-health treatment. It is not intended to be all-inclusive as Claimant's mental-health treatment is not at issue in this appeal.

In March 2010, Ms. Johnson saw clinical counselor Christy Sugarman, LPCC, LICDC, at Comprehensive Behavioral Specialists for a psychological evaluation. Tr. 300.

[. . .]

Counselor Sugarman diagnosed Ms. Johnson with major depressive disorder, recurrent, severe, without psychotic features; and rule-out diagnoses of panic disorder and anxiety disorder. Id. Ms. Sugarman reported that these diagnoses were a result of Ms. Johnson's "injury, chronic pain, difficulty walking or sitting for extended periods of time, and economic issues related to her inability to work" and recommended an evaluation by a psychiatrist for medication, and further counseling. Tr. 303.

As Counselor Sugarman had recommended, Ms. Johnson immediately began counseling sessions, and had over 30 appointments with Counselor Sugarman between June 2010 and November 2011, a period of more than a year. Tr. 309-10, 553-57.

[. . .]

In November 2011, Ms. Johnson stopped going to sessions due to her anxiety about being enclosed in the elevator to travel up to her counselor's office, her physical inability to climb stairs, and issues with payment by BWC. Tr. 557, 570.

Ms. Johnson began psychiatric treatment with Byong Ahn, M.D., in September 2010. Tr. 444, 504-06. [. . .] Dr. Ahn diagnosed major depression, possible recurrent type, and probably bipolar affective disorder, type II, with a current Global Assessment of Functioning ("GAF") score of 45,3 and prescribed a mood stabilizer and anti-depressant. Tr. 506.

Dr. Ahn treated Ms. Johnson nine more times between October 2010 and March 2012. Tr. 367, 369, 385, 497-503, 559, 578. Trying to stabilize Ms. Johnson's depressive symptoms, Dr. Ahn tried several additional mood stabilizers and antidepressants, including Depakote, Stavzor, Elavil, Lithium, and Lamictal. Id. At the treatment sessions, Dr. Ahn noted Ms. Johnson's continuing irritability, anger problems, mood swings, sleep problems, and pain. Id.

[. . .]

In March and April 2012, Ms. Johnson received counseling from

> Paula Campbell, MSW, LISW. Tr. 567-74. Ms. Campbell diagnosed adjustment disorder with depression and anxiety, and major depression, with a GAF of 55.4 Tr. 573.

(ECF No. 14 at 5-10).

### B. Opinion Evidence at Issue

At issue are the opinions of two medical sources: 1) Dr. Byong Ahn, Claimant's treating psychiatrist from 2010 through 2012; and 2) Dr. Carl Tishler, State Agency reviewing psychologist.

#### 1. Ahn

In January 2012, Ahn noted that Claimant was able to return to work and explained that she "should be able to try [vocational rehabilitation] at this time. She has better insight but symptoms continue to interfere daily." (ECF No. 10 at 650). Ahn further noted that Claimant experienced "continued fluctuation of symptoms of depression: anhedonia[,] irritability[, and] mood swings, persistent back [and] leg pain, claustrophobia." (ECF NO. 10 at 650). Ahn noted that Claimant is "unable to function for some part of each day due to persistent pain issues" and that she "remains easily frustrated and mildly paranoid." (ECF No. 10 at 650).

In April 2012, Ahn completed a medical source statement, which the ALJ summarized as follows:

> Treating medical service provider Byong Ahn, M.D., examined the claimant in April 2012 and opined the claimant experienced marked limitations regarding maintaining attention and concentration for two hour periods of time, marked limitations regarding performing work activities at a reasonable pace, keeping a regular work schedule and maintaining attendance, and interacting properly with others (Ex. 33F).

(ECF No. 10 at 764).

The ALJ gave little weight to Ahn's opinion explaining that it

5

is not entirely consistent with the record, which shows improvement of her ability to care for herself. In March 2010, she reported to treating medical service providers that  she was dependent on others for most of the tasks that she used to complete without assistance, including driving, grocery shopping, cooking and standing for extended periods (Ex. 2F/3, Hearing  Testimony). However, in May 2010, just two months later, she reported she can perform her own activities of daily living including grooming, dressing and bathing (Ex. l0F/22, 33, 13F/7). She also reported in June 2011 that she shares chores with others, including cleaning, cooking and laundry (Ex. 7F/7). *As a state agency consultant, Dr. Ahn is well-versed in Social Security program knowledge. Nonetheless, Dr. Ahn did not have access to subsequent records, nor did he personally examine the claimant.*

(ECF No. 10 at 764) (emphasis added).

### 2.  Tishler

At the agency's request, Claimant's medical records were reviewed by Carl Tishler, Ph.D., a non-treating medical professional. Tishler opined the Claimant had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (ECF No. 10 at 533-534, 547). The ALJ assigned partial weight to this opinion explaining that it is "generally consistent with the record, which shows that the claimant experienced improvement but still shared household chores, suggesting she was not entirely independent (Ex. 2F/3, 7F/7, 10F/22, 33, 13F/7)." (ECF No. 10 at 764). Additionally, Tishler opined that Claimant "is capable of 1-2 step tasks done in a stable environment with limited social interaction." (ECF No. 10 at 535). The ALJ did not discuss this part of Tishler's opinion.

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3.  The claimant had the following severe impairments: obesity, degenerative disc disease of the lumbar spine with radiculopathy and spondylolisthesis of L4 on L5; major depressive disorder; dysthymic disorder; anxiety disorder; bipolar disorder; adjustment disorder.

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined [in the Regulations] except she can lift and carry push and pull occasionally 20 pounds frequently 10 pounds, can stand and/or walk for 2 hours out of an 8 hour workday, can sit for 6 hours of [] an 8 hour workday, she can never climb ladders, ropes or scaffolds, can frequently stoop, kneel, crouch and crawl, is limited to performing simple routine tasks and occasional interactions with supervisors, co workers and the public, and is limited to routine workplace changes.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant was not under a disability, as defined in the Social Security Act, from April 13, 2009, through January 31, 2013.

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Discussion**

    **1.** **Whether the ALJ committed reversible error by failing to provide good reasons for the weight she gave to the opinions of treating psychiatrist Ahn as she conflictingly identified him as a "treating medical provider" and a "State agency consultant."**

In her first issue, Claimant argues that even though the ALJ's determination may be supported by substantial evidence, the matter must be remanded because the ALJ failed to apply the correct legal criteria. Specifically, Claimant argues that by failing to give "good reasons" for giving treating psychiatrist Ahn's opinions little weight, the ALJ failed to adhere to the regulations governing treating source opinions.  (ECF No. 14 at 14). The Commissioner argues that substantial evidence supports the RFC and that the ALJ gave good reasons for the weight given to Ahn's opinion when she "noted Plaintiff had exhibited an improvement in her mental health condition from March 2010 to May 2010, and even more so by June 2011, with no corresponding setbacks by April 2012, indicating Dr. Ahn's extreme opinion was inconsistent with the record" and further noted that "Ahn seemingly stopped treating Plaintiff immediately after rendering the opinion, leaving zero evidence from April 2012 through January 2013 to support the opinion." (ECF No. 16 at 12). The Commissioner further argues that any error in the ALJ referring to Ahn as a state agency consultant constitutes harmless error. (ECF No. 16 at 13).

The Commissioner does not dispute that Ahn was Claimant's treating psychiatrist. Under the treating source rule, an ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley* v. *Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (eff. to July 31, 2006)[3])). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188, at *2 (July 2, 1996).  Here, Claimant does not appeal the ALJ's decision to give Ahn less than controlling weight, only that the ALJ failed to give "good reasons" for the weight given.[3]  Accordingly, the first step of the treating source analysis is satisfied.

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. § 404.1527(c)(2) (eff. Aug. 24, 2012). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (2011); § 404.1527(c)(2). "These reasons must be

---

[3] Although Claimant notes that "[t]he administrative law judge failed to recognize this treatment relationship, which in turn resulted in a failure to consider whether as a treating physician, his opinion deserved controlling weight" (ECF No. 14 at 16), she failed to assign error to the ALJ's controlling weight analysis and her brief does not further argue the issue. Accordingly, this issue is waived. *See Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 686 (6th Cir. 2007) (citing *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) *abrogated on other grounds as recognized by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks and citations omitted)).

'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson*, 378 F.3d at 544). The Sixth Circuit has plainly stated that a reversal and remand of a denial of benefits is warranted, even if the record may contain substantial evidence that supports the Commissioner's decision, when the ALJ fails to provide good reasons for discounting the medical opinion of the plaintiff's treating physician. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010) (citing *Wilson*, 378 F.3d at 544). The failure to follow the "the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.' " *Friend*, 375 F. App'x at 551 (quoting *Rogers*, 486 F.3d at 243); *see also Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

### a. April 2012 Opinion

#### i. The "good reasons" requirement.

Claimant challenges whether the ALJ gave "good reasons" for giving treating psychiatrist Ahn's April 2012 opinions little weight. Of the factors the ALJ was required to consider – the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as

a whole, and any specialization of the treating physician – the ALJ mentioned three. First, the ALJ discussed the opinion's inconsistency with the record, which she argued demonstrated Claimant's ability to groom, dress and bathe herself as well as share responsibilities in cleaning, cooking, and laundry. Next, the ALJ also supported the weight given by addressing Ahn's specialty – as a state agency consultant. Finally, the ALJ discussed Ahn's relationship with Claimant – that of a non-examining medical source. The latter two factors are patently incorrect. Ahn is not a state agency consultant, but rather, his specialty is psychiatry. Additionally, Ahn personally treated Claimant at least ten times from September 2010 until March 2012. (ECF No. 10 at 374, 395, 504-513, 566, 585).

Here, the ALJ explains that Ahn's opinion was inconsistent with the record, 20 C.F.R. § 404.1527(c)(4), and identifies the evidence supporting that finding. However, the ALJ's explanation also cites to inaccurate descriptions of the examining relationship, 20 C.F.R. § 404.1527(c)(1), and Ahn's specialty, 20 C.F.R. § 404.1527(c)(5). Because the ALJ does not precisely explain how the stated reasons "'affected the weight accorded to the opinion[]'" this "'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Friend*, 375 F. App'x at 551 (*quoting Rogers*, 486 F.3d at 243; *also citing Wilson* at 546); *see also Gayheart*, 710 F.3d at 376 (the ALJ's explanation must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). Accordingly, the ALJ's explanation for the weight given to Ahn's opinion fails to meet the good reasons requirement.

However, although the ALJ failed to follow the good reasons requirement, as discussed below, the error was harmless and the ALJ's decision should be affirmed. *Friend*, 375 F. App'x at 551.

### ii.  Harmless Error Analysis

There are circumstances when noncompliance with the good reasons requirement is "harmless error," if: " '(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;' (2) 'if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;' or (3) 'where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation.' " *Friend*, 375 F. App'x at 551 (quoting *Wilson*, 378 F.3d at 547). Should the third situation occur, "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 F. App'x at 551 (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x. 462, 470–72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005)). The function of the good reason requirement is to provide clarity and transparency to the reviewing body and, more importantly, to the plaintiff, but it is not a "procrustean bed" that requires "an arbitrary conformity at all times." *Friend*, 375 F. App'x at 551. The court must review the "decision to see if it implicitly provides sufficient reasons for the rejection of [the treating physician's] opinion ... not merely whether it indicates that the ALJ did reject [that] opinion." *Id.* at 551 (quoting *Hall*, 148 F. App'x at 464).

Here, Ahn's opinion is in the form of a two-page check-box medical source statement form. (ECF No. 10 at 584). On the form, Ahn checked the boxes indicating that Claimant suffered marked limitations in four areas: maintaining attention and concentration for two-hour periods of time; performing work activities at a reasonable pace; keeping a regular work schedule and maintaining punctual attendance; and ability to interact appropriately with others. (ECF No. 10 at

584). Ahn also generally explained that Claimant's mental limitation would prevent her from successfully working at a routine simple unskilled job because her "level of depression appears to be affected by her experience of being in constant pain. She is consistently unable to sleep well[;] her focus and ability to concentrate have decreased while irritability has increased." (ECF No. 10 at 585).

### a) Ahn's medical source statement is patently deficient, thus meeting the first situation for harmless error.

The Sixth Circuit has held that a checkbox opinion, unaccompanied by any explanation, is " 'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted). Here, Ahn did not offer any explanation for his checkbox opinion that Claimant suffered marked limitations regarding her attention and concentration, work performance and pace, and ability to keep regular work schedule and maintaining punctual attendance. (ECF No. 10 at 584). Accordingly, Ahn's checkbox opinion on these areas is patently deficient.[4]

### b) The ALJ's decision implicitly provides sufficient reasons for the weight given, thus meeting the third situation for harmless error in *Friend*.

### Claimant's ability to relate to others.

Ahn also used a checkbox to opine that Claimant's ability to interact appropriately with

---

[4] The ALJ's failure to identify the check-box format as the reason for discounting the opinion does not prevent this Court from doing so now. *See Gallagher v. Berryhill,* No. 5:16-CV-01831, 2017 WL 2791106, at *10 (N.D. Ohio June 12, 2017), *report and recommendation adopted sub nom. Gallagher v. Comm'r of Soc. Sec.,* No. 5:16 CV 1831, 2017 WL 2779192 (N.D. Ohio June 27, 2017) (*citing Ellars v. Comm'r of Soc. Sec.*, No. 2:14 CV 2050, 2015 WL 3537442 at *3 (S.D. Ohio Jun. 4, 2015), *report and recommendation adopted sub nom. Ellars v. Colvin*, 2015 WL 4538392 (S.D. Ohio Jul. 27, 2015), *aff'd Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563 (6th Cir. 2016)).

others is markedly limited. (ECF No. 10 at 584). Unlike the previous checkboxes, here Ahn included the explanation that "medications have been changed and adjusted consistently because mood has not stabilized for any consistent amount of time." (ECF No. 10 at 584). The ALJ's decision implicitly rejects Ahn's opinion that Claimant is markedly limited in her ability to relate to others by sufficiently explaining that the record supports at most a moderate limitation.[5]

First, the ALJ discussed how the record supports at most a moderate limitation in this area:

> In interacting with others, the claimant has a moderate limitation. The claimant reported in her function report that she does not spend time with others and could not leave her home alone (Ex. 4E/3, 7-8, Hearing Testimony). Although she did not indicate problems getting along with others on her function report, she made statements to treating medical service providers of being frustrated with people in general, including her husband (Ex. 4E/8, 19F/5-6, 10F/21). The record contains a general lack of evidence that would indicate the claimant had difficulty interacting with others, and treating medical service provider regularly described the claimant as "pleasant" and "cooperative" (Ex. 7F/2, 5, 10F/27, 43, 18F/7, 22F/8, 36F/4, 15, ). She admitted that she spends time with others such as her sister and her husband (Ex. 4E/3, 8). Finally, she was able to engage appropriately with the people at her hearing (Hearing Testimony). Again, out of an abundance of caution, I find the claimant has moderate limitations in the area of interacting with others.

(ECF No. 10 at 754).

The ALJ further explained "[t]he claimant's allegations of difficulty getting along with others are not entirely corroborated by the objective examination findings and observations. The record contains a general lack of evidence that would indicate the claimant had difficulty interacting with others, and treating medical service provider[s] regularly described the claimant

---

[5] The ALJ's decision also implicitly provides sufficient reasons for the rejection of Ahn's opinion that Claimant is markedly limited in maintaining attention and concentration for two-hour periods of time, performing work activities at a reasonable pace, and keeping a regular work schedule and maintaining punctual attendance. However, because Ahn failed to support these limitations in any way, the Court will not detail these reasons.

as 'pleasant' and 'cooperative' (Ex.7F/2, 5, 10F/27, 43, 18F/7, 22F/8, 36F/4, 15). Further, she was able to engage appropriately with the people at her hearing (Hearing Testimony)." (ECF No. 10 at 759).

Finally, the ALJ discussed the opinions of several other medical sources, each of whom opined that Claimant had an even milder limitation in this area (and the other mental functional areas) than the ALJ determined. Consultative examiner Thomas Evans, Ph.D. examined Claimant and opined that she "had symptoms which may impact her ability to respond appropriately to work pressures, including irritability, low motivation and fatigue, but otherwise experienced no mental limitations ([Ex. 7F])." (ECF No. 10 at 763). The ALJ gave Evans's opinion little weight explaining that it was not consistent with the record and further noted that at examinations Claimant "was able to engage in testing, demonstrated normal thought content and process, and got along well with treating medical service provider[s] (Ex. 2F/4, 7F/2, 5, l0F/3, 7, 11, 21, 27, 33, 37, 43, 49, 110, 18F/2, 4, 7, 22F/8, 36F/4, 15)." (ECF No. 10 at 763).  Claimant's medical records were also examined by William Nordbrock, M.D., a non-treating medical professional. Nordbrock opined that Claimant "experienced no severe mental impairment, and experienced only mild limitations in functioning. (Ex. 9F)". (ECF No. 10 at 763). The ALJ gave this opinion little weight, however, as Nordbrock had not reviewed subsequent records nor had he personally examined Claimant. (ECF No. 10 at 764). Next, Christy Sugarman, Licensed Practitioner Clinical Counseling, who had provided counseling services to Claimant from June 2010 through November 2011, completed a "Daily Activities Questionnaire" on October 25, 2011. (ECF No. 10 at 519). Sugarman did not include any functional limitations or insight into Claimant's ability to get along with others. (ECF No. 10 at 519). "Ms. Sugarman does not provide any narrative as to how the claimant is actually limited in functioning. Ms. Sugarman is not a medically acceptable source.

Nonetheless, to the extent this statement could be considered an opinion, I give it some weight because it is generally consistent with the record's reflection of improved functioning in activities of daily living (Ex. 2F/3, 7F/7, l0F/22, 33, 13F/7)." (ECF No. 10 at 764). Finally, the ALJ gave partial weight to the opinion of State Agency reviewing physician, Tishler, who opined that Claimant had moderate limitations in her social interactions. (ECF No. 10 at 757 (citing to Ex. 16F and 17F/7)).

Accordingly, the ALJ's decision implicitly includes good reasons for giving Ahn's opinion little weight by attacking the opinion through its analysis of the medical records and other medical source opinions.

### Claimant's ability to successfully work at a routine, simple, unskilled job.

In addition to the check-boxes discussed above, Ahn's opinion included a note that Claimant's mental limitation would prevent her from successfully working at a routine simple unskilled job because her "level of depression appears to be affected by her experience of being in constant pain. She is consistently unable to sleep well[;] her focus and ability to concentrate have decreased while irritability has increased." (ECF No. 10 at 585). The ALJ implicitly attacks this conclusory opinion in her decision. For example, when addressing Claimant's limitations with respect to concentrating, persisting, or maintaining pace, the ALJ states:

> The claimant reported deficits in concentration and completing tasks (Ex. 4E/8). On the  other hand, the claimant admitted she is capable of concentrating for the purposes of caring for  her pet dogs and her daughter, driving a car, completing household  chores such as dishes and  preparing simple meals, watching television, socializing with her sister and shopping (Ex. 2E/2,  4E/3-8, 7F/4, l0F/21, Hearing Testimony). During the period at issue, the record contains a general lack of evidence that would indicate deficits in the areas of thought processes, concentration and attention (Ex. 22F/8). At examination, the claimant had difficulty with serial Ts,  but was able to  complete serial 4's  with one error and she could spell a five letter word forwards and  backwards,  but during one test, she stopped and

16

> reported she could not continue (Ex. l0F/21). Finally, the claimant
> appeared capable of concentrating during the hearing and persisting
> throughout its entirety. Again, I have acted with caution, and find
> moderate limitations in this area.

(ECF No. 10 at 754). The ALJ also explains:

> Similarly, concerning her difficulty concentrating, aside from
> reported difficulties examinations failed to note thought process or
> thought content disturbances, and the claimant was alert and
> oriented (Ex. 2F/4, 7F/5, l0F/3, 7, 11, 21, 33, 37, 49, 110, 18F/2, 4,
> 22F/8). She admitted she had no problems with concentrating for
> purposes of caring for her pet dogs and her daughter, driving a car,
> completing household chores such as dishes and preparing simple
> meals, watching television, socializing with her sister and shopping
> (Ex. 4E/3-8, 22F/8, Hearing Testimony).

(ECF No. 10 at 759). Finally, the ALJ concludes that "[a]lthough the claimant did not have any

mental health counseling prior to 2010, during the adjudicatory period she treated her mental

symptoms with medication and counseling, and, as shown above, *the evidence suggests*

*improvement in her symptoms* (Ex. 18E, 7F/3, l0F/32, 22F/6)." (ECF No. 10 at 760 (emphasis

added)). "At the very least, the record does not indicate a worsening of her symptoms, which

suggests that the claimant's symptoms are adequately treated with medication and counseling.

Overall, these findings indicate the claimant's mental symptoms do not limit her functioning as

alleged, however, mental-related limitations were nonetheless assigned out of an abundance of

caution." (ECF No. 10 at 760). Thus, the ALJ's decision implicitly attacks Ahn's opinion regarding

the worsening of Claimant's mental limitations.

### The decision as a whole demonstrates that the ALJ understood that Ahn was claimant's treating psychiatrist.

Finally, in the ALJ's explanation for giving Ahn's opinion little weight she incorrectly

refers to Ahn as a State Agency consultant and states that Ahn did not personally examine claimant.

(ECF No. 10 at 764). It is sufficiently clear from reviewing the ALJ's decision, however, that she

understood Ahn's examining relationship with claimant and Ahn's medical specialty. For example, the ALJ references Ahn's September 2010, January 2012, and April 2012 examinations of Claimant in her decision. (ECF No. 10 at 764 and 765). The ALJ also cites to various medical records from Ahn's examinations of Claimant. (See ECF No. 10 at 757, 758, 759, and 764). Although the ALJ never refers to Ahn as Claimant's treating "psychiatrist", the ALJ's decision makes it clear that the ALJ reviewed Ahn's examination records and considered Ahn's opinions in relation to Claimant's mental limitations. Accordingly, the decision implicitly demonstrates that the ALJ understood that Ahn was claimant's treating psychiatrist.

### iii. The ALJ's failure to follow the "good reasons" requirement was harmless error.

Although the ALJ's explanation failed to precisely explain the good reasons for the weight given to the opinion of Claimant's treating psychiatrist's opinion, such error was harmless as Ahn's medical source statement was "patently deficient". In addition, the Court finds that the ALJ's decision indirectly attacked Ahn's opinion as inconsistent with the other medical opinions and records. *See Friend*, 375 F. App'x at 551. Finally, the ALJ's decision implicitly demonstrates that the ALJ understood Ahn's specialty and examining relationship with Claimant. Accordingly, although the ALJ has not complied with the terms of § 1527(d)(2), the goal of the regulation – that is to provide the procedural safeguard of reasons – has been met. *Id*. The ALJ's decision should be affirmed.

### b.  January 2012 Opinion

Claimant also takes issue with the ALJ's good reasons for giving Ahn's January 2012

opinion little weight.[6] In January 2012, Ahn opined that Claimant "should be able to try [vocational] [rehabilitation] at this time. She has better insight but symptoms continue to interfere daily." (ECF No. 10 at 650). Ahn explained that the Claimant was "unable to function for some part of each day due to persistent pain issues" and that she continued to suffer from a fluctuation of symptoms of depression, anhedonia, irritability and mood disorder. Ahn also estimated that Claimant should be able to return to work by May 7, 2012. (ECF No. 10 at 650). The ALJ gave this opinion little weight overall but found that Ahn's opinion on Claimant's ability to return to work is generally consistent with the record. (ECF No. 10 at 765). The ALJ further explained "[a]s above, the claimant showed steady improvement in activities of daily living that require concentration, attention, persistence, and understanding, remembering and applying information between 2009 and 2011. (Ex. 2F/3, 7F/7, 10F/22, 33, 13F/7)." (ECF No. 10 at 765). Similar to the April 2012 opinion, however, the ALJ again identified Ahn as a state agency consultant and stated that he had not examined Claimant. (ECF No. 10 at 765).

As explained above, the ALJ's decision demonstrates that the ALJ understood that Ahn was claimant's treating psychiatrist. Thus, the reference to Ahn as a state agency consultant not having examined Claimant was harmless error. Further, as discussed above, the ALJ's decision, implicitly attacks Ahn's opinion regarding the worsening of Claimant's mental limitations and supports the determination that Claimant's mental abilities were improving. The ALJ's decision should be affirmed.

---

[6] Claimant's argument regarding Ahn's January 2012 opinion is unclear as it is only briefly mentioned in Claimant's brief. The Commissioner did not address it. However, because Claimant's argument falls under the "good reasons" issue raised on appeal, the Court has evaluated it only under the "good reasons" requirement. Any other issue relating to Ahn's January 2012 opinion is waived. *See Stiltner*, 244 F. App'x at 686.

**2. Whether the administrative law judge erred in her evaluation of the opinion of the State agency psychologist, Dr. Tishler.**

In her second assignment of error, Claimant argues that the ALJ failed to adequately consider Tishler's opinion by failing to mention Tishler's comment that Claimant "is capable of 1-2 step tasks done in a stable environment with limited social interaction." (ECF No. 14 at 20 (quoting ECF No. 10 at 535)). Claimant argues that the error is not harmless because the "vocational expert testified that if a person could only perform 1-2 step tasks in addition to the other limitations ultimately found by the administrative law judge, then there was no work that could be performed." (ECF No. 14 at 20).

Because Tishler was not a treating source, the "good reasons" rule does not apply. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Instead, when determining how much weight to give a non-treating source opinion, "the ALJ should consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of [his] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in [his] specialty." *Id.* (citing 20 C.F.R. 404.1527(d)).

Here, the ALJ gave partial weight to Tishler's opinion that Claimant had moderate limitations in functioning. The ALJ explained that Tishler's opinion as a non-treating medical professional "is generally consistent with the record, which shows that the claimant experienced improvement but still shared household chores, suggesting she was not entirely independent[.]" (ECF No. 10 at 764). Although brief, the ALJ's explanation touches on several of the factors in 20 C.F.R. 404.1527(d) – examining relationship, treatment relationship, and consistency—which is all that is required. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (While the stated reason for discounting a physician was brief, it was sufficient because it accounted for several factors in § 404.1527).

Moreover, although the ALJ must explain the weight assigned, "there is no legal requirement for an ALJ to explain each limitation or restriction [she] adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight." *Smith v. Comm'r of Soc. Sec.*, No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013), *aff'd* (Jan. 30, 2014). Accordingly, the ALJ was not required to discuss Tishler's limitation of Claimant's ability to perform 1-2 step tasks.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Plaintiff's Statement of Errors and AFFIRM the Commissioner's decision.

DATED: 1/12/2021

    *Carmen E. Henderson*
Carmen E. Henderson
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).